IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 05-cv-00682-PSF-PAC

JULIETTE HARRINGTON,

      Plaintiff,

v.

SHOP.COM, a California corporation; and
ALTURA INTERNATIONAL, a California corporation,

      Defendants.

---

## ORDER ON CLAIM CONSTRUCTION

---

This patent infringement case is before the Court on Plaintiff's Opening Claims Construction Brief (Dkt. # 44), filed December 23, 2005, and Defendants' Claim Construction Brief (Dkt. # 54), filed January 20, 2006. Plaintiff Juliette Harrington filed her reply brief on January 27, 2006 (Dkt. # 61). Parties also filed a Joint Claim Construction and Prehearing Statement (Dkt. # 39), which included exhibits setting forth parties' stipulated and disputed claim terms (Exs. A and B, respectively). A *Markman* claim construction hearing[1] was held before this Court on February 10, 2006, after which parties updated their positions, filing an Amended Joint Claim Construction Statement (Dkt. # 66) with updated stipulated and disputed claim terms (Exs. A and B,

---

[1]A *Markman* hearing, named for the decision of the Supreme Court in *Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996), is held for the purpose of construing the patent claims alleged to be infringed. *See e.g. Baxa Corp. v. McGaw, Inc.*, 981 F. Supp. 1348, 1350 (D. Colo. 1997), *aff'd*, 185 F.3d 883 (Table) (Fed. Cir. 1999).

respectively).  This Court now makes the following findings and conclusions regarding

the construction of the patent claims at issue.

## I. BACKGROUND AND PROCEDURAL HISTORY

Ms. Harrington filed her complaint on April 13, 2005 (Dkt. # 1), and filed an

amended complaint on August 9, 2005 (Dkt. # 23).  Defendants answered on August

18, 2005 (Dkt. # 27).  Ms. Harrington claims that Defendants SHOP.COM and Altura

International have infringed her patent, which was issued to her on April 20, 1999 (the

"'454 Patent").  Defendants own and operate a uniform resource locator ("URL") known

as Shop.com, which incorporates an online shopping method that allegedly infringes

upon the '454 Patent, which discloses a "method of effecting commerce in a networked

computer environment."  Pat. Abstract.  Ms. Harrington also alleges that defendants

may have additional websites that infringe her patent, and that they may be making

software that induces others to infringe or contributes to the infringement of her patent.

Defendants deny any infringement, and claim that the patent is invalid for failure

to comply with the requirements of United States patent laws.  They counterclaim for a

declaration that they do not infringe the patent and that the patent is invalid and

unenforceable.

Defendants filed their First Amended Answer to the Amended Complaint and

their First Amended Counterclaim on January 23, 2006 (Dkt. # 58), accepted by this

Court by oral ruling on January 24, 2006.  Defendants allege that Ms. Harrington failed

to disclose material art and failed to disclose a co-inventor.  They request declaratory

judgment of noninfringement and of invalidity and of unenforceability based on

inequitable conduct.  Defendants further maintain non-infringement as an affirmative

defense to Ms. Harrington's claims.  Plaintiff replied to this counterclaim on February 2,

2006 (Dkt. # 62).

## II. OVERVIEW OF THE PATENT AND THE CLAIMS

The '454 Patent disclosed an invention described as "[a] method of effecting

commerce in a networked computer environment in a computerized system."  Pat.

Abstract.  Essentially, Ms. Harrington has invented a database system by which users

(or shoppers) can search for desired items from various "vendors" through one

integrated database, rather than searching for the items by accessing the individual

vendors' websites or other "vendor network sites."  (The patent assumes that a website

may not be the exclusive presence of a vendor or a database accessible through a

computer.)  A shopper can choose items from various vendors and place them in a

common "shopping trolley," where he or she can choose to purchase all or none of the

items and can specify how he or she wants to purchase each item (*i.e.*, use one credit

card for one, a debit card for another, etc.).  Each item selection triggers a "transaction

notification"–a transmission to the database with the user's selection and associated

financial transaction data.

The patent contains eight claims, of which the first is by far the most extensive,

basically setting out the system as described above.  Claim 2 provides that the

database provides a realtime representation of a user's selection including certain

accompanying data.  Claim 3 sets out details about the "query step," or the process by

which the user interfaces with the database in order to search for her desired items.

3

Claim 4 provides that the "financial transaction step" uses "electronic point of sale transaction techniques."  Claim 5 refers to validating and transmitting a user's credit card details to the vendor and financial transaction service provider.  Claim 6 involves confirmation of a user's selection at the user's request, providing a "realtime total of a cash containment for a particular series of . . . selections."  Claim 7 describes the vendor and product information available to the database.  Finally, claim 8 describes transaction notification, which is effected after the user activates a "selection button on the remote vendor interface."

## III.  APPLICABLE LEGAL STANDARDS

A "simple patent case" involves two elements–construing the patent and determining whether infringement occurred.  The first, which is currently before the Court, is a question of law, to be determined by the Court, while the second is a question of fact for the trier of fact.  *Markman*, 517 U.S. at 384.   In other words, "construction of a patent, including any terms of art within its claim, is exclusively within the province of the court."  *Id.* at 372.

The purpose of the claims contained in the patent is to apprise the public of what is protected by a particular patent.  *Id.* at 373.  Therefore, a determination of their scope will determine the "metes and bounds" of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention.  *See Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989).  As noted by the Supreme Court in *Markman*: "It has long been understood that a patent must describe the exact scope of an invention and its manufacture to

secure to the patentee all to which he is entitled, and to apprise the public of what is still open to them." 517 U.S. at 373 (citing *McClain v. Ortmayer*, 141 U.S. 419, 494 (1891) (internal quotation marks and brackets omitted). Because this right in a patentee excludes others in the public, and because the public and other inventors thus need to know as precisely as possible the scope of a patentee's claims, special considerations apply to patent claim construction.

A recent Federal Circuit decision reaffirmed earlier decisions regarding the important role of the patent specification in claim construction. *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), *cert. denied*, 2006 WL 386393 (U.S. Feb. 21, 2006). Reaffirming the principle that "the words of a claim are generally given their ordinary and customary meaning," the *Phillips* court also emphasized the importance of reading the words of a claim "not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.* at 1312-13 (internal citations and quotation marks omitted). Giving words their ordinary and customary meaning may require examination of terms that have a particular meaning in a field of art, and whose meaning may not be immediately apparent. In such situations, a court

> looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean . . . includ[ing] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

*Id.* at 1314 (internal citations and quotation marks omitted). In particular, the specification (a written description of the invention required in the patent application by

5

the Patent Act, 35 U.S.C. § 111(a)(2)(A), as prescribed in § 112) provides a context for

the claims, and "is always highly relevant to the claim construction analysis.  Usually, it

is dispositive; it is the single best guide to the meaning of a disputed term."  *Id.* at 1315

(quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

## IV.  THE DISPUTED CLAIMS

Parties agree that the biggest dispute centers on the construction of "remote

vendor network site."  *See* Pl.'s Constr. Br. at 9-10; Defs.' Constr. Br. at 1.  Parties

differ on whether the term must refer to a vendor site remote from the database or only

remote from the user.  Additionally, they differ on dozens of other words and clauses

contained in the '454 Patent.  The claims will be addressed in the order contained in

parties' amended table of disputed terms, Ex. B to the Amended Joint Claim

Construction and Prehearing Statement (Dkt. # 66).

### A.  "A Networked Computer Environment" (Claim 1)

Parties disagree on whether this requires one computer accessed by a user, or

two or more connected computers accessed by a user.  This is related to the bigger

dispute mentioned above, in that plaintiff defines the term such that a vendor site could

be located on the database computer, whereas defendants contend that the vendor site

must be separate from the database and that a networked environment requires at

least two connected computers which are accessible to a user.

Both parties cite to the specification contained in the '454 Patent, which includes

two diagrams (Figs. 1 and 2) as well as a description.  As directed by the Federal

Circuit in *Phillips*, reference to the specification "is the single best guide to the meaning

of a disputed term" and is usually dispositive. *Phillips*, 415 F.3d at 1315. Here, the specification contemplates and allows for more than two computers, but nothing indicates that it must use more than two computers, as defendants' construction suggests.[2] Therefore, plaintiff's construction–"an environment in which a computer user has accessed and connected with one or more computers"–is the proper construction. *See* Pat. at 1:17-21; 2:25-27.

### B. "A Database of Vendor Product Data" (Claim 1)

Defendants offer a construction that includes more detail regarding the functionality of the database. Such functionality is indeed described in the specification; however, the specification also contains the qualifier "preferably." Pat. at 3:10; 3:17. Such a qualifier indicates that while the functionality described by defendants is desirable, it is not required. Therefore, plaintiff's construction–"a collection of data relating to products offered by different vendors that may be searched and accessed"–is proper.

### C. "Associated Database Interface" (Claim 1)

Both parties agree that this phrase describes software enabling a user to interact with the database. Defendants require that the software be located on the same computer as the database, and offer more detail regarding the functionality of the

---

[2]Defendants rely heavily on the two figures included in the specification. However, the description clearly indicates that use of the figures is "by way of example only." Pat. at 3:22-23. The patent does not limit itself to those drawings unless otherwise noted in the language of the claims or description. *See TI Group Auto. Sys. (N. Am.), Inc. v. VDO N. Am., L.L.C.*, 375 F.3d 1126, 1138 (Fed. Cir. 2004), *cert. denied*, 543 U.S. 1147 (2005) (fact that drawings represent a "particular embodiment does not similarly limit the scope of the claims").

software.  Defendants' construction is supported by the plain language in Claim 1, which describes a "database of vendor product data and associated database interface on a first computer."  Pat. at 6:54-55; *see also* Pat. at 3:67-4:2 (describing a database and associated database interface on a single machine).  Plaintiff contends that the functionality detail offered by defendants "complicates" the phrase and that their construction "requir[es] that each such function be present."  Pl.'s Constr. Br. at 8. However, defendants' construction does not use mandatory language regarding the described functions, but rather appears to contemplate that such an "associated database interface" would include the functionality mentioned throughout the specification.  *See* Pat. Claim 1 (describing functionality of database).  Further, defendants' language does not prohibit other functions from also being present. Therefore, defendants' construction—"software on the same computer as the database that allows a local user to interact with and perform operations (such as queries) on the database, that receives transmissions of transaction notifications, that provides realtime selection information to the local user, and that sends transmissions of purchase/ordering data"—is the proper construction.

### D.  "Remote Access" (Claim 1)

Parties' constructions are identical up to a point: both sides agree that this phrase means "the ability to send and receive data between one computer and a different computer or terminal."  Defendants wish to add the following language to the end of this construction: "at another location."  This adds ambiguity to the construction, and the distinction between two separate computers is sufficient to give appropriate

meaning to the term "remote."  For example, two separate computers on two separate

desks in a single office can access each other remotely–but is the second computer "at

another location?"  Defendants' construction is thus ambiguous and unhelpful, and their

presentation at the *Markman* hearing failed to provide clarification, as counsel noted

that long distances would be required in order to qualify as remote.  It is unclear what

type of "long distances" would be required, or why distance is significant.  Plaintiff's

construction–"the ability to send and receive data between one computer and a

different computer or terminal"–is the proper construction and appropriately accounts

for the "remote" part of access.

### E.  "Remote Vendor Network Site" (Claims 1, 6, and 7)

This phrase generates the most debate by parties.  The two constructions share

essentially no common language, as plaintiff describes it as a "location" and

defendants describe it as a "server application."  Although the patent suggests that a

server application, such as a website, is an example of the intended meaning, and

indeed the most common example, the patent does not limit itself to such a definition.

A location seems to capture the intention of the '454 Patent more accurately.  *See* Pat.

at 5:62-64 (discussing the database "direct[ing]" users to any of three types of remote

vendor sites).  The specification describes the three types of vendor sites–real, real

internet, and virtual internet.  *Id.*  The first of those "may have no connection to the

internet, but have [sic] details and information accessible on the database."  *Id.* at 5:65-

66.  Such a description suggests that a "server application, such as a website," is a

misleading definition.

9

Defendants' construction seeks to impose the requirement that a remote vendor network site be "owned and operated by an entity . . . which is a different commercial entity from that which provides the database and database interface." Nothing in the claims or the specification requires this distinction. Although defendants in their presentation at the *Markman* hearing cited to language in the claims and the specification *allowing* the vendor to be a different entity than the database administrator, they can point to no language *mandating* this result. *See TI Group Auto. Sys. (N. Am.), Inc.*, 375 F.3d at 1138 (patentee is "entitled to the full breadth of claim scope supported by the words of the claims and the written description").

Finally, nothing in the patent requires the remote vendor network site to be "on a different computer from the database" as defendants contend. Rather, a real vendor site appears to only have a computer presence on the database, and therefore on that computer. *See* Pat. at 5:64-66; *see also id.* at 6:3 ("Both types of vendor may coexist on the database."[3]). The site is instead remote from the *user*. Therefore, plaintiff's construction–"the location of information regarding a particular vendor that is remote to the local user and that may include real vendor sites, real internet vendor sites, or virtual internet vendor sites, including sites that have no connection on the internet but have information loaded onto, accessible from and local to the database"–is the proper construction.

---

[3]Plaintiff argues that this phrase actually contains a typographical error, and that it should read: "Both types of vendor sites." Pl.'s Reply Br. at 14 n.7. Defendants in their presentation at the *Markman* hearing argue against any correction by the Court of the patent. The Court declines to take a position on the error and finds that the language as written does not undermine plaintiff's offered construction.

### F.   "Interactively Connecting" (Claim 1)

Defendants wish to construe this claim in the context of a larger phrase in Claim 1: "interactively connecting with one or more of the remote vendor network sites." However, "remote vendor network sites" has already been construed, and therefore the phrase suggested by the defendants would complicate a term already defined.  *See Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001) ("a claim term should be construed consistently with its appearance in other places in the same claim or in other claims of the same patent").  Plaintiff's suggested construction– "establishing communication in a manner that allows the user to view information from, direct information to, request information from or receive information from a site or sites"–is a proper construction, and indeed is not significantly different from defendant's construction, which suggests an "exchange of a set of related messages."

### G.   "Interactively Connecting With One or More of the Remote Vendor Network Sites" (Claim 1)

As noted above, "remote vendor network sites" was already construed in part E, *supra*.  "Interactively connecting" was construed in part F, *supra*.  Therefore, plaintiff offers no construction.  Defendants' construction requires the connection to be available only "where such an ability did not exist before."  However, defendants admitted at the *Markman* hearing that part of plaintiff's construction of "interactively connecting"–"establishing communication," *see* Part F, *supra*–essentially captures the same meaning, stating that plaintiff's construction agrees with theirs.  This further

undermines any need to construe the phrase.  The Court declines to construe this phrase in light of its earlier construction of the relevant parts above.

### H.  "Connected" (Claim 1)

Again, defendants wish to construe this word in the context of a larger phrase, "is connected to the remote vendor network sites."  For the same reasons, construing the entire phrase is unnecessary.  Plaintiff's construction–"user has the ability to view information from, direct information to, request information from, or receive information from the site"–takes the word's context into account and is consistent with the Court's earlier construction of "interactively connecting."  Plaintiff's construction is therefore accepted.

### I.  "Is Connected to the Remote Vendor Network Sites" (Claim 1).

Because the most important words or phrases have already been construed, defendants' construction of this claim will not be accepted.  Further, defendants' preferred construction gives no meaning to "remote vendor network sites," so it is unclear why they wish to construe the phrase in its entirety rather than simply construing "connected," a word whose construction requires–and took–recognition of its context.  *See Phillips*, 415 F.3d at 1313 (construe claims in context of the entire patent, including the specification).

### J.  "Once Connected to the Remote Vendor Network Site" (Claim 1)

For the reasons stated in part I, *supra*, the Court need not construe this claim.

### K.  "Connect to Subsequent Remote Vendor Network Sites" (Claim 1)

It is unclear why the plaintiff wishes to construe this entire phrase after her objection to the preceding construction above.  The Court finds that the operative word is "subsequent," which the Court construes as "another," along the lines of plaintiff's interpretation.  *See* Pl.'s Constr. Br. at 15.  The Court declines to construe the remainder of the phrase, as it has already been construed.  *See Phillips*, 415 F.3d at 1314 (claim terms are normally used consistently throughout the patent).

### L.  "Triggers a Transaction Notification" (Claim 1)

Defendants do not cite to sufficient support in the specification or elsewhere for their position that "immediacy" should be a requirement of "triggers."  Rather, the specification notes that the "particular purchase notification means may vary from website to website."  Pat. at 4:29-31.  However, plaintiff's construction–"to initiate notice of a transaction, which may include notice of the item selected, its price, its availability, and other specifications"–leaves far too much ambiguity as to what the notification contains.  *See id.* at 2:42-45 ("the selection of a particular product/service triggers a transaction notification *which records the users selection and associated financial transaction data*") (emphasis added).  The Court adopts a hybrid construction, finding that the proper construction is "to initiate notice of the selection, sent over the network, along with its associated financial transaction data."

### M.  "Which is Transmitted" (Claims 1 and 5)

Both parties agree that the proper construction includes "which is sent." Defendants offer the further modifier, "over the network."  Because the patent only contemplates a user being connected to either the database or the vendor sites by way

13

of the network, defendants' construction is supported by the specification of the patent. Therefore, the Court construes the phrase to mean "which is sent over the network."

### N. "Associated Financial Transaction Data" (Claim 1)

This phrase clearly contemplates information sufficient to complete a transaction and to enable a user to purchase an item and a vendor to receive payment for an item. *See* Pat. at 2:66-3:9 (describing possible methods of effecting payment through transmitting various forms of "associated financial transaction data").  Although this data may take different forms, defendants' construction properly defines it as "payment instructions sufficient to complete the purchase of the selected product/service, such as credit card details or instructions for direct billing to a Financial Administration Party." *See id.* at 6:23-24.

### O. "Shopping Session" (Claim 1)

Defendants stipulated to Ms. Harrington's proposed construction as "a period of time during which a local user shops for one or more products or services."  *See* Def.'s Constr. Br. at 39; Am. Jt. Claim Constr. St. at 1.

### P. "During or at the Conclusion of a Local User[']s Shopping Session, the User Confirms the Selection" (Claim 1)

The defendants attempt to limit their construction by including the word "must," suggesting that for the patent to apply, a user must confirm a selection and cannot simply browse.  That limitation is unsupported by the specification.  The language contemplates allowing the user to confirm her selection, but it does not require such a confirmation.  *See Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989

(Fed. Cir. 1999) (terms in a claim are to be given "full effect" and a party wishing to confine the terms "must, at the very least, point to a term or terms in the claim with which to draw in those" terms) (internal citations and quotation marks omitted). Although defendants' construction is designed to avoid the interpretation that the "shopping trolley" functionality can survive into a "subsequent shopping session," *see* Defs.' Constr. Br. at 40, such a concern is overblown.  That construction is not supported by the specification or the description, and is not mandated by plaintiff's proffered construction.  Therefore, plaintiff's construction–"the user confirms the selection during or at the conclusion of the shopping session"–is proper.

### Q.  "Transmits Purchase/Ordering Data to the Remote Vendor Sites" (Claim 1)

Defendants claim that the term "remote vendor sites" is without antecedent and therefore Claim 1 is rendered indefinite.  The Court disagrees, finding that the "remote vendor sites" are the "remote vendor network sites" mentioned earlier in Claim 1.  *See* Pat. at 6:62-63 (using both terms interchangeably).  Defendants admit as much by acknowledging at the *Markman* hearing that the phrase corresponds to the remote vendor network sites mentioned in the previous paragraph of Claim 1.  Plaintiff's construction–"to send information relating to the local user's selection and purchase of products and/or services to the remote vendor network site or sites"–is the proper construction.

15

### R.  "Realtime Representation" (Claim 2)

Parties have agreed to the following construction of "realtime:"  "current or contemporaneous."  Ex. A to Jt. Claim Constr. St.  Defendants' construction of the above phrase does not include the terms "current" or "contemporaneous."  However, plaintiff's construction fails to account for the necessity that the representation be information that is accurate at the time of its display, as contemplated by the specification and the language of the claim itself.  A realtime representation *today* of information that was accurate *yesterday* certainly does not conform with the ordinary understanding in 1997 (when the patent application was filed) of "realtime representation."  *See also* Lerche Decl. at ¶ 71, att. to Def.'s Constr. Br.  Therefore, a hybrid construction is appropriate, and the Court construes the phrase as "a current or contemporaneous display of information that is accurate at the time of its display."

### S.  "Exchange Rate Information" (Claim 2)

The defendants offer a definition of "exchange rate" without accounting for the inclusion of the term "information."  *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir.), *cert. denied*, 126 S. Ct. 488 (2005) (terms should not be rendered superfluous).  Nothing in the patent justifies a limitation to one type of exchange rate.  *See Johnson Worldwide Assocs., Inc.*, 175 F.3d at 989 (terms in a claim are to be given "full effect" and a party wishing to confine the terms "must, at the very least, point to a term or terms in the claim with which to draw in those" terms).  Plaintiff's construction–"information that enables a local user to determine the cost of a good or service in another currency"–is the proper construction.

16

### T.  "Electronic Point of Sale Transaction Techniques" (Claim 4)

The '454 Patent explicitly contemplates commercial transactions using a variety of techniques.  Defendants' construction limiting the techniques to being recorded "at the physical location that the sale is made" is unnecessary, and injects confusion into the term–where is the physical location or locations that the sale is made?  The language "electronic point of sale" appears to contemplate the method by which a transaction is initially completed electronically.  Thus, plaintiff's construction–"the use of computerized systems to complete transactions electronically that may include the processing of credit card information, the electronic transferring of funds, the ability to check and verify credit, and the tracking of inventory"–is a proper and complete construction of the phrase.  *See also* Pat. at 4:51-58 (contemplating a variety of financial transaction methods).

### U.  "Validated" (Claim 5)

The specification clearly contemplates "confirmation functionality" to confirm the purchases rather than confirm the existence and sufficiency of the account, as the defendants contend.  *See* Pat. at 6:22-24.  Therefore, the proper construction is suggested by the plaintiff: "confirmed or verified."

### V.  "Transmitted to the Vendor" (Claim 5)

Defendants contend that the term "vendor" is without antecedent and Claim 5 is therefore invalid.  However, the term does refer to any of the vendors contemplated in Claim 1 ("database of vendor product data" and "remote vendor network sites").  The vendor is the entity from whom a product or service is purchased after using the

17

database interface to search for the desired product or service.  The term "vendor" is

used elsewhere in the specification for precisely the same purpose.  *See* Pat. at 4:53.

Defendants claim that it is "uncertain" which of the vendors is contemplated in Claim

5–all of them? Only one of them?  *See* Def.'s Constr. Br. at 47.  It is clear from reading

the term and Claim 5 in context that the vendor specified is the relevant vendor–the

vendor from whom a user purchased something.  Plaintiff's construction–"to send to the

seller, seller's database or the seller's system"–is a proper construction.

### W.  "Financial Transaction Service Provider" (Claim 5)

Defendants claim that this phrase is without antecedent and Claim 5 is therefore

invalid.  Although a specific entity is not provided, the phrase clearly intends to

encompass one of the various financial transaction methods contemplated in the

specification.  *See* Pat. at 2:66-3:19, 4:51-58.  Further, defendants attempt to use a

similar term in their proffered construction of an earlier claim.  *See* Def.'s Constr. Br. at

38-39 (using term "Financial Administration Party" and quoting to the latter patent

specification).  Defendants seemed able to essentially interpret what it now finds

indefinite.  Plaintiff's construction–"the person or entity that provides a service to

facilitate or complete the financial transaction"–is the proper construction and is

supported by the patent specification.

### X.  "A Realtime Total of Cash Containment" (Claim 6)

Again, parties have agreed to the following construction of "realtime:" "current or

contemporaneous."  Ex. A to Jt. Claim Constr. St.  Plaintiff includes this construction in

her construction of the phrase.  Defendants construe the phrase as referring to a

18

physical container holding coins or bills.  Such a construction ignores the context of the

'454 Patent.  *See Phillips*, 415 F.3d at 1313 (read claim terms in the context of the

particular claim and in the context of the entire patent).  Defendants at the *Markman*

hearing argued that their construction made sense in light of the patent and its context,

noting that the prior art listed on the patent consisted of kiosks, which could incorporate

such a construction.  However, such an argument shows only that defendants'

construction makes sense in light of the prior art, and not in light of the patent itself.

Plaintiff properly construes the phrase to mean "a current or contemporaneous total of

the cost of the products or services selected."  Not only does this make sense in the

context of Claim 6, but it makes sense in the context of the '454 Patent as a whole.

*See also* Pat. at 4:46-48, 6:16-18.

### Y.  "A Particular Vendor" (Claim 7)

Plaintiff offers a construction of "vendor" but ignores the term "particular."

Defendants offer a similar construction, but acknowledge the term "particular" by

distinguishing it from other vendors.  *See Merck & Co.*, 395 F.3d at 1372 (terms should

not be treated as superfluous).  Therefore, defendants' construction–"a person or entity

that accepts payment in exchange for goods or services, distinct from other persons or

entities that accept payment in exchange for goods or services"–is proper.

### Z.  "Activating a Selection Button on the Remote Vendor Interface" (Claim 8)

Defendants contend that "remote vendor interface" is without antecedent and

therefore indefinite.  The Court disagrees.  *See* Pat. at 3:17-19; 4:29-42.  They also

contend that the remote vendor interface is distinct from the associated database

19

interface, which may or may not be true and it not required by the patent.  Plaintiff's

construction–"clicking or selecting a button, icon, or active/hyperlinked text to purchase

the selected products or services through an interface for the real vendor site, real

internet vendor site, or virtual vendor site"–is proper.

### AA.  "Information Relating to the Products/Services Provided by the Remote Vendor Sites" (Claim 7)

Again, defendants claim that "remote vendor sites" is without antecedent and

claims 1 and 7 are indefinite.  This assertion has been rejected.  *See supra* part IV.Q;

*see also* Pat. at 5:1-9.  Plaintiff's construction– "information relating to product or

service specifications, including price, availability or details about the product or

service, which is supplied by a vendor"–is proper and supported by the specification.

## V.  CONCLUSION

Based on all the evidence and arguments submitted by the parties, this Court

construes the disputed claims of plaintiff's '454 Patent as set forth above.  As detailed

in the Scheduling Order (Dkt. # 26), the parties have 150 days from the date of this

Order to file dispositive motions and to complete discovery according to the timetable

set forth therein.

DATED: March 2, 2006

BY THE COURT:

*s/ Phillip S. Figa*
_____
Phillip S. Figa
United States District Judge